# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5345 | **DATE** | 7/30/2003 |
| **CASE TITLE** | Apotex Corp. vs. Istituto Biologico Chemioterapico S/o.a., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Unibios and the GSK Defendants' motions to dismiss under the doctrine of *forum non conveniens* (Docs. No. 14-2, 33-1) are granted. Defendants' motions to dismiss for lack of personal jurisdiction (Docs. No. 7-1, 14-1, and 32-1) are stricken without prejudice. This case is dismissed without prejudice to litigation in Italy. Apotex's agreed motions for leave to file an oversize brief (Doc. No. 51-1) and for restriction of documents (Doc. No. 53-1) are granted as directed on June 19, 2003.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 4 number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUL 31 2003 | |
| | Notified counsel by telephone. | | date docketed | 58 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/30/2003 date mailed notice | |
| ETV | courtroom deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| APOTEX CORP. and APOTEX, INC., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 02 C 5345<br>) |
| ISTITUTO BIOLOGICO CHEMIOTERAPICO<br>S.p.a., GLAXOSMITHKLINE plc,<br>GLAXOSMITHKLINE SERVICES plc, and<br>THE WELLCOME FOUNDATION, LTD., | ) Judge Rebecca R. Pallmeyer<br>)<br>)<br>) |
| Defendants. | ) |

DOCKETED JUL 31 2003

## MEMORANDUM OPINION AND ORDER

Plaintiffs Apotex Corp. and Apotex Inc.[1] (collectively "Apotex" or "Plaintiffs"), brought suit in this court against Defendants Istituto Biologico Chemiterapico s.p.a. ("Unibios"), GlaxoSmithKline plc ("GSK plc"), GlaxoSmithKline Services Unlimited[2] ("GSK Services"), and The Wellcome Foundation Ltd. ("Wellcome"), for breach of contract and tortious interference.[3] The lawsuit stems from a contract entered into by the Plaintiffs and Unibios, an Italian company, in which Unibios agreed to supply Apotex with acyclovir, a drug used to treat the herpes virus. The GSK Defendants, owners of an Italian patent for the acyclovir drug, sued Unibios for patent infringement in an Italian court, and won. Unibios subsequently severed its business dealings with Apotex, leading Apotex to file this lawsuit.

---

[1] Apotex Inc. is a United States company; Apotex Corp. is Canadian. (First Amended Complaint ¶¶ 1,2.)

[2] The court notes that the First Amended Complaint erroneously refers to this Defendant as GlaxoSmithKline Services plc.

[3] The last three Defendants will be referred to collectively as the "GSK Defendants," since they are related entities and have filed their motions and briefs together in this case. Unibios is represented by separate counsel, although it makes several of the same arguments as the GSK Defendants.



Defendants now move to dismiss on the ground of *forum non conveniens*,[4] arguing that the dispute belongs in an Italian court because Unibios and Apotex agreed to litigate there, and because it would be a more convenient forum for the parties and witnesses. After a review of the record, the court concludes that resolving this case in an Italian tribunal will be more efficient and therefore grants the Defendants' motions to dismiss.

## FACTUAL BACKGROUND

**The Parties**

Plaintiff Apotex Corp. markets pharmaceutical products in the United States. Apotex Corp. is incorporated in Delaware and has its principal place of business in Vernon Hills, Illinois.[5] (First Amended Complaint ¶ 1.) Plaintiff Apotex Inc., a Canadian corporation with its principal place of business in Weston, Ontario, develops, manufactures and markets pharmaceutical products. (*Id.* ¶ 2.) Plaintiffs refer to each other as "affiliates"; the record does not reveal their precise relationship. (Plaintiffs' Amended Consolidated Memorandum of Law in Opposition to the GSK Defendants' and Unibios' Motions to Dismiss, hereinafter "Pls.' Mem." at 2.)

Defendant Istituto Biologico Chemioterapico s.p.a. ("Unibios"), an Italian corporation with its principal place of business in Turin, Italy, manufactures active pharmaceutical ingredients which are used to manufacture pharmaceutical products. (First Amended Complaint ¶ 3.)

---

[4] Defendants also moved to dismiss for lack of personal jurisdiction. After the parties had partially briefed the issue, the court stayed discovery on those motions pending resolution of the Defendants' motions to dismiss on the grounds of *forum non conveniens*.

[5] The issue of Apotex Corp.'s principal place of business is contested by the parties. While the court accepts Plaintiffs' representation that Vernon Hills, Illinois is Apotex Corp.'s principal place of business, Defendant Unibios points out that according to the Illinois Secretary of State's records, Apotex Corp. is not authorized to do business in this state, and a press release issued by Apotex Corp. from December 2002, posted on the company's website, identifies Weston, Florida, as the company's headquarters for sales and marketing. The same press release refers to Vernon Hills as the location of "research and development facilities." (Apotex Corp. website page; Declaration of Sarah C. Doyle ¶¶ 3, 4, Exs. A & C to Unibios' Reply Memorandum in Further Support of its Motion to Dismiss.)

Defendant GSK plc is a United Kingdom corporation with its corporate headquarters in Brentford, Middlesex, England, and operational headquarters in Philadelphia, Pennsylvania and Research Triangle Park, North Carolina. (*Id.* ¶ 4.) GSK plc is the corporate parent of the GlaxoSmithKline Group (GSK Group), a global healthcare organization engaged in the development, manufacturing and marketing of pharmaceutical products. The GSK Group is comprised of GSK plc and various subsidiaries, including Defendants GSK Services and Wellcome. (*Id.* ¶¶ 5,6.) Defendant GSK Services is a United Kingdom corporation with its principal place of business located in Greenford, Middlesex. (*Id.* ¶ 6.) Defendant Wellcome is engaged in the development, manufacturing and marketing of pharmaceutical products. A United Kingdom corporation located in Greenford, Middlesex, Wellcome is an indirect subsidiary of GSK plc and a direct subsidiary of GSK Services. (*Id.* ¶ 7.)

**History Between Apotex and Unibios**

In 1994, Apotex[6] decided to begin product development for the eventual manufacture and marketing of generic acyclovir products in the United States. Acyclovir is an anti-viral drug used against herpes viruses.[7] In 1994, Apotex officials entered into discussions with Unibios regarding Unibios' acyclovir production. (First Amended Complaint ¶ 15.) Apotex Corp. (the U.S. company) entered into a Supply Agreement with Unibios in 1995. Under the terms of the agreement, Unibios agreed to sell acyclovir to Apotex Corp., and also promised to do everything necessary to ensure that its manufacturing facility, and the acyclovir manufactured by Unibios, were approved by the U.S. Food and Drug Administration ("FDA"), a prerequisite to marketing drugs in the United States. (*Id.* ¶¶ 12, 17.)

---

[6]   The individuals have not been identified.

[7]   Acyclovir is referred to by the parties as the "active pharmaceutical ingredient", or "API" necessary to manufacture the product. The parties have not identified the other ingredients that go into the anti-viral drug. The record reflects that Unibios had been producing acyclovir before entering into a business relationship with Apotex.

3

Plaintiffs provide a description in their First Amended Complaint of the method for obtaining approval to market a generic drug in the United States, which Defendants do not contest. Drug manufacturers obtain approval by filing an Abbreviated New Drug Application ("ANDA") with the FDA. The ANDA must include information to show that the generic drug has the same "route of administration,"[8] dosage form and strength as the previously approved brand name drug. (Id. ¶ 12.) The ANDA must identify the supplier from which the manufacturer will acquire the active pharmaceutical ingredient ("API") necessary to manufacture the product.[9] (Id. ¶ 13.) The drug manufacturer must also include with its ANDA a "letter of access" from the designated API supplier. In the letter of access, the API supplier authorizes the FDA to review the supplier's Drug Master File ("DMF") in connection with the FDA's consideration of the ANDA. The DMF summarizes the equipment, manufacturing steps, raw materials, and laboratory controls used by the API supplier to prepare the particular API. (Id. ¶ 14.)

The Agreement of Mutual Exclusivity between Unibios and Apotex (referred to by the parties to this action as the "Supply Agreement"), stated that Apotex would purchase all its requirements of acyclovir exclusively from Unibios, and Unibios agreed to exclusively provide acyclovir to Apotex for the United States market. (Supply Agreement ¶¶ 1, 2, Ex. C to Pls.' Mem.) The Supply Agreement required Apotex to place orders via "ATLANTIC CHEMICALS & PHARMACEUTICALS - Canada." (Id. ¶ 9.) The record does not reflect Atlantic's relationship with the parties, but shows that Atlantic played a role in the formulation of the Supply Agreement, and requested the above language to be placed into the contract to ensure that the company would receive a commission on all orders placed by Apotex (the agreement does not specifically mention commissions).

---

[8] Apotex has not defined "route of administration," but the court presumes this refers to the method by which the drug is ingested by the patient (i.e. orally).

[9] The API is the ingredient in a drug that gives the drug its desired therapeutic effect. (First Amended Complaint ¶ 13.)

(Memorandum from E.A. Relle of Atlantic to Bruno Garibaldi of Unibios of Dec. 7, 1994, Ex. C to Pls.' Mem.) Absent any information to the contrary, the court presumes that all orders for acyclovir were placed through Atlantic in Canada. The final paragraph of the Supply Agreement provides that "[f]or any controversy which might arise from the interpretation or execution of the present contract, the competent Forum is TORINO (Italy)." (Supply Agreement ¶ 10.) A note at the bottom of the Supply Agreement lists an Italian address for Unibios, and the agreement is printed on Unibios stationery, listing several Italian addresses on the letterhead. (Id.) Bruno Garibaldi, the Commercial Director for Unibios at the time, negotiated the terms of the agreement from Trecate, Italy, and signed the agreement in Trecate as well. (Declaration of Vito Ruisi ¶ 9, Ex. A to Unibios' Memorandum in Support of its Motion to Dismiss.) Though the court suspects its record is incomplete, several documents submitted by the parties show that Barry Sherman of Apotex Inc. (the Canadian company) was actively involved in negotiating the terms of the Supply Agreement. (Ex. 6 to GSK Defendants' Memorandum in Support of their Motion to Dismiss, hereinafter "GSK Defs.' Mem.") The Supply Agreement was apparently only drafted in English; none of the parties have mentioned an Italian version of the document.

On approximately May 29, 1996, Unibios submitted a DMF to the FDA for acyclovir, and on or near June 16 of that year, Unibios provided a letter of access to Unibios' DMF to TorPharm, an affiliate of Apotex. (First Amended Complaint ¶¶ 19, 20.) Through TorPharm, Apotex filed an ANDA for acyclovir tablets on December 5, 1997, and an ANDA for acyclovir capsules on July 27, 1999. In these ANDAs, Apotex requested FDA approval for acyclovir tablets and capsules to be sold in the United States. Apotex advised the FDA that Unibios would be the supplier of the acyclovir used in manufacturing the drugs. (Id. ¶ 21.)

**Italian Litigation**

Defendant Wellcome,[10] the owner of an Italian patent for acyclovir, determined that Unibios' manufacture of acyclovir infringed that patent. On a date not identified in this record, Wellcome notified Unibios of the infringement. (Declaration of Giancarlo Del Corno ¶ 4, hereinafter "Del Corno Decl.", Ex. 1 to GSK Defs.' Mem.) Presumably in response to this notice, Unibios filed a preemptive suit in an Italian tribunal (on a date unknown to this court), seeking a judicial determination that the patent was a nullity or was not infringed. (Id.) Wellcome counterclaimed for a declaration of infringement. (Del Corno Decl. ¶ 6(c).)

In 1996, the Italian Tribunal ruled in Wellcome's favor, finding that its Italian patent was valid and had been infringed. (Id.) The proceeding was continued for assessment of damages at a later date. (Id.) In the interim, Unibios appealed the partial judgment to the Court of Appeal of Rome. (Id. ¶ 6(e).) In the meantime, a parallel infringement suit was pending before the Tribunal of Novara between Unibios and Glaxo Wellcome s.p.a. ("Glaxo Wellcome"), an Italian company and licensee of the patent from Wellcome.[11] (Id. ¶ 6(f).)

The parties reached a settlement of these pending matters in August 1998. Their settlement called for Unibios to pay a certain amount to Wellcome. Unibios agreed, further, that the Tribunal's findings of validity and infringement would be published in two Italian newspapers and a periodical. (Settlement Agreement, ¶¶ 3, 5, Ex. 1(B) to GSK Defs.' Mem.) In this agreement, Unibios acknowledged the validity of Wellcome's Italian patent and agreed to cease manufacturing or marketing acyclovir prior to the expiration of the patent, "save different supply agreements which could be executed between the parties." (Id. ¶ 2.) The parties have represented to the court, and the court accepts as undisputed, that court documents relating to the Settlement Agreement and

---

[10] The Wellcome officials have not been identified.

[11] Other than Glaxo Wellcome's status as a licensee of Wellcome, the court is unaware of the relationship between Glaxo Wellcome and the Defendants in this lawsuit.

6

the underlying litigation are located in Italy. (GSK Defs.' Mem. at 5.)

At some point in 1998, Unibios entered into a Supply Agreement with Glaxo Wellcome, in which Unibios agreed to supply acyclovir to Glaxo Wellcome from August 1, 1998 to December 31, 2001.[12] (Supply Agreement between Unibios and Glaxo Wellcome of 1998, Ex. F to Pls.' Mem.) The agreement stated that issues or disputes arising from that contract should be referred to Ian Howells of Glaxo Wellcome, in Middlesex, United Kingdom, and Vito Ruisi, of Unibios, in Trecate, Italy. (Id.) The parties agreed that "[a]ll information shared between the parties will be treated as confidential in line with the secrecy agreement dated 24th November and signed by both parties."[13] (Id.) The "Special Condition" section of the agreement noted that "[t]his Supply Agreement will come into force on the day of the signature by the Parties of the separate Settlement Agreement." (Id.)

On November 2, 1998, Unibios notified the FDA that it withdrew its DMF. Unibios did so without advance notice to, nor the consent of, Apotex, and Unibios subsequently refused to supply Apotex with acyclovir. (First Amended Complaint ¶¶ 28, 29.) Apotex contends that these events caused significant injury to Apotex, in that Apotex has been prevented from obtaining FDA approval to manufacture and market acyclovir in the United States. Because of Unibios' withdrawal of its

---

[12] The court received a redacted version of the agreement, with specific amounts to be shipped deleted. The record is not entirely clear on whether the Glaxo Wellcome that entered into the 1998 supply agreement with Unibios is the same entity as Glaxo Wellcome s.p.a. that was involved in the Italian litigation. The supply agreement reflects that Glaxo Wellcome operations are headquartered in the United Kingdom, whereas the record reflects that Glaxo Wellcome s.p.a. is an Italian company (which does not preclude its having an office in the U.K.) The supply agreement references the separate Settlement Agreement, thus leading the court to conclude the companies are closely related, if not the same. (Supply Agreement between Unibios and Glaxo Wellcome of 1998.)

[13] The "secrecy agreement" apparently referred to an agreement between Unibios and GlaxoWellcome in 1997 in which Unibios agreed to evaluate the feasibility of manufacturing acyclovir for GlaxoWellcome. Because the parties understood that to facilitate the study it might be necessary to share confidential information with one another, they entered into this agreement whereby the information disclosed was required to be kept in strict confidence. (Secrecy Agreement of Nov. 24, 1997, Ex. D to Pls.' Mem.)

DMF, Apotex alleges that the FDA has refused to approve Apotex's ANDAs.

On October 17, 2002, Apotex filed suit in this court against Unibios for breach of contract (Count I), promissory estoppel (Count II), breach of supply contract[14] (Count III), and tortious interference with prospective business advantage (Count VI[15]), and against GSK plc, GSK Services, and Wellcome for tortious interference with contract (Count IV), and tortious interference with prospective business advantage (Count V). Apotex alleges that Unibios breached their agreement by withdrawing its DMF for acyclovir, made promises to Apotex on which Apotex reasonably relied, and intentionally prevented Apotex's expectations under their contract from being met. (Id. ¶¶ 35, 39, 40, 62.) With respect to the GSK Defendants, Apotex alleges that they intentionally induced Unibios to breach its agreements with Apotex through the execution of the Italian settlement agreement. (Id. ¶¶ 51, 57.)

During the course of discovery (allowed by this court for the limited purposes of these pending motions), Unibios identified 14 witnesses with relevant knowledge about the case, all of whom reside in Italy. (GSK Defs.' Mem. at 5.) The GSK Defendants have identified 15 likely witnesses: three reside in Italy and 12 reside in the United Kingdom. (Id.) Apotex has identified five likely witnesses thus far, two of whom reside in Canada, and three who are residents of this District in Illinois. (Id.)

Defendants now move for dismissal of the action under the doctrine of *forum non conveniens*, arguing that Turin, Italy is the proper venue for the dispute to be litigated. For the following reasons, the court grants Defendants' motions.

## DISCUSSION

The analysis of *forum non conveniens* motions requires consideration of whether there is

---

[14] If there is a difference between Counts I and III, the court does not understand it.

[15] Apotex has labeled this claim "Count X," however, because there are only six counts listed in the complaint, the court will refer to this as Count VI.

an adequate alternative forum and, if so, a balancing of "a series of private and public interests in determining whether to retain the case or dismiss it in favor of [the] alternative forum."[16] *First Union National Bank v. Paribas*, 135 F.Supp.2d 443, 446, n.6 (S.D.N.Y. 2001) (citations omitted). The parties do not dispute that Italy would provide an adequate forum for resolving this dispute. At issue, however, is whether the private and public factors require transfer of the litigation. In addition, Defendants urge that language in the Supply Agreement mandates transfer. The court first turns to that issue.

**The Supply Agreement**

Defendants argue that the language of the Supply Agreement mandates that this action be dismissed and refiled in Torino, Italy. The court notes first that such arguments are often made in the context of motions to dismiss for want of proper venue. *See Paper Express, Ltd. v. Pfankuch Maschinen*, 972 F.2d 753, 754 (7th Cir. 1992). Defendants have made no such distinction here, however, and the court shall treat all arguments as falling under the motion to dismiss for *forum non conveniens*. Defendants accurately cite *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) for the proposition that forum selection clauses "are prima facie valid and should be enforced." Therefore, Defendants argue that the court must enforce the provision in the Supply

---

[16] There appears to be a conflict between the circuits on the question whether *forum non conveniens* is governed by federal or state law in a diversity case. *See Weiss v. Routh*, 149 F.2d 193, 195 (2d Cir. 1945) (state law governs), *Rivendell Forest Prods., Ltd. v. Canadian Pac. Ltd.*, 2 F.3d 990, 992 (10th Cir. 1993) (federal law governs); *Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis, Ltd.*, 906 F.2d 45, 50 (1st Cir. 1990)(federal law); *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1159 (5th Cir. 1987) (en banc) (federal law), vacated on other grounds, 490 U.S. 1032, prior opinion reinstated in relevant part, 883 F.2d 17 (5th Cir. 1989). The Seventh Circuit has not ruled on the question, but the issue is likely immaterial because Illinois law is quite similar to the federal law, as evidenced by the Illinois Supreme Court's citation to federal authorities in resolving such cases. *See, e.g., Vinson v. Allstate*, 144 Ill.2d 306, 311, 579 N.E.2d 857, 859 (1991) (citing and quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947) in discussing the public interest factors relevant to the *forum non conveniens* issue). In any event, the parties have briefed the issue as though federal law controls and thus consented to its application. *Price v. Pierce*, 823 F.2d 1114, 1119 (7th Cir. 1987) (noting that parties to a lawsuit are generally entitled to determine which law shall govern their dispute).

Agreement that, "[f]or any controversy which might arise from the interpretation or execution of the present contract, the competent Forum is TORINO (Italy)." (Supply Agreement ¶ 10, Ex. C to Pls.' Mem.) First, however, the court must determine whether the clause in the Supply Agreement is in fact a forum selection clause. *Paper Express,* 972 F.2d at 755.

Plaintiff contends, first, that the quoted language does not constitute a forum selection clause at all. According to Apotex, the clause relates solely to jurisdiction, not to venue. The case law shows, however, that courts take a broad view of language that expresses a preference for a particular forum. In *Paper Express,* for example, a United States company filed a lawsuit in this court against the German manufacturer of a collating machine that malfunctioned. *Id.* at 754. In affirming the district court's dismissal of the action for want of proper venue, our Court of Appeals noted that the warranty that came with the machine stated: "[w]arranty: 6 months according to the rules of the VDMA." *Id.* The VDMA, an association of German machine manufacturers that promulgates a set of standard commercial terms, had a rule stating that the supplier's principal place of business would be the forum for resolving all contractual disputes. The Seventh Circuit concluded that the warranty provision constituted a forum selection clause encompassing the VDMA rule. *Id.* at 755. The court explained that "where venue is specified with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *Id.* at 757 (citation omitted).

The language at issue in this case–"the competent forum is TORINO"–is arguably more specific than what was before the *Paper Express* court. Apotex nevertheless suggests that the parties merely agreed that a lawsuit *could* be brought in Italy, rather than that it *must* be brought there. The court does not find this argument persuasive; given Italy's status as Unibios' home country, and the relationship to this case of the earlier Italian litigation, it is hard to imagine that the parties would doubt that Italy had jurisdiction over any dispute between them.

10

In support of their argument that an Italian forum is obligatory, rather than optional, Defendants rely on *Frediani v. Delgreco, S.P.A. v. Gina Imports, Ltd.*, 870 F.Supp. 217, 220 (N.D. Ill 1994), where Judge Hart of this court enforced the following provision in a contract between the parties: "For any controversy, the only competent forum will be Lucca." In *Frediani*, an Italian plaintiff sued an American company for failing to pay for shipments of olive oil. *Id.* at 219. The defendant moved to dismiss the suit based on the quoted language.[17] *Id.* Judge Hart granted the motion, pointing out that "[a]bsolute clarity as to being a forum selection clause is not required." *Id.* at 220 (citation omitted). To be an exclusive clause, however, the court noted that there must be language that is mandatory and limited to the specified venue. *Id.*, citing *Paper Express*, 972 F.2d at 756. The court held that the word "[f]orum certainly refers to a location and a court is a type of forum. 'Lucca' is the Italian city where Plaintiff is located. The sentence, therefore, is a forum selection clause." *Id.* at 220-21.

Apotex cites a Second Circuit opinion in which the contract language at issue provided that "[a]ny dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek courts, specifically of the Thessaloniki Courts." *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs., Inc.*, 22 F.3d 51, 52 (2d Cir. 1994). The Second Circuit held that the district court had "clearly erred" in dismissing the New York suit, because the clause did not evidence the parties' intent to make jurisdiction exclusive. *Id.* The language of the clause at issue here differs from that of the *Boutari* contract, however. The parties to the Supply Agreement for acyclovir did not use the word "jurisdiction," rather, they identified Torino, Italy as "the competent

---

[17] While the defendant's motion to dismiss was apparently for lack of subject matter and personal jurisdiction, the court noted that "the present motions only involve a question of proper venue. This is not a question of subject matter jurisdiction." *Id.* The court also noted that 28 U.S.C. § 1404(a), which provides for transfer from one federal district court to another, was inapplicable. *Id.* (citations omitted). Although the court did not treat the motion as falling under the *forum non conveniens* doctrine, this court finds that the court's reasoning in *Frediani* is relevant to the present dispute.

11

*forum.*" (Supply Agreement ¶ 10, Ex. C to Pls.' Mem.) (emphasis added.) The clause in *Frediani*, thus more closely resembles the relevant language here. *Frediani*, 870 F.Supp. at 220-21.

In reaching this conclusion, the court acknowledges that the contract in *Frediani*, unlike this one, includes the word "only." Even without that modifier, however, the clause in the *Frediani* contract would express the parties' intention that Lucca would be the sole forum for resolution of disputes arising from the contract. Although the language at issue in this case does not state that Torino, Italy is the only appropriate forum, it does clearly identify Torino as "the . . . forum" in which the parties agreed to litigate. (Supply Agreement ¶ 10.) To accept Apotex's argument that the language in the clause does not mean that a Torino forum is mandatory would be to ignore the definite article used in the clause, and substitute the word "a" for the word "the." The court declines to re-write the agreement in this fashion and now second-guess the parties' agreement about where to air their disputes. *See Paper Express,* 972 F.2d at 757 ("The law is clear: where venue is specified with mandatory or obligatory language, the clause will be enforced.") The language of the Supply Agreement between Unibios and Apotex persuades the court that Italy is the only forum contemplated by the Supply Agreement for resolving disputes.

Apotex argues that even if the clause is interpreted as a forum selection clause, its claims in this action do not arise from the "interpretation or execution of the contract," and therefore Apotex need not proceed in Torino. (Supply Agreement ¶ 10.) The court is not persuaded, and agrees with Defendants that a dispute about "execution" should be understood to include an alleged breach of the contract's terms. *See* BLACK'S LAW DICTIONARY 589 (7th ed. 1999) (defining "execution" as "[t]he act of carrying out or putting into effect.")

One final matter relating to the Supply Agreement is not addressed by the parties: whether the forum selection clause in the Supply Agreement should apply also to Apotex's claims against the GSK Defendants, who were not parties to the Supply Agreement. *See Frietsch v. Refco, Inc.,* 56 F.3d 825, 827 (7th Cir. 1995) ("courts in this country . . . enforce forum selection clauses in favor

12

of non-parties 'closely related' to a signatory.") (citations omitted). The Defendants have made no argument that they are closely related, and the fact that they have been on the opposite sides of litigation in the past suggests that they are not. On the other hand, all of the Defendants in this case can be expected to raise issues relating to the Italian patent litigation, and its ultimate resolution is their defense to this case. Significantly, Apotex itself did not raise this issue. The court presumes the parties agree that the litigation should not be bifurcated, even if the GSK Defendants by themselves lack standing to enforce the clause in the Supply Agreement. In any event, as will be explained below, substantial additional private and public interest factors support dismissal or transfer of this matter under the doctrine of *forum non conveniens*.

### *Forum Non Conveniens* Arguments

Some authorities suggest that the foregoing analysis of the language in the Supply Agreement ends this inquiry on this motion, at least with respect to Unibios. *See AAR Intern., Inc. v. Nimelias Enterprises, S.A.*, 250 F.3d 510, 524-25 (7th Cir. 2001) (noting that other circuit courts have suggested that where parties to an international dispute have agreed to a mandatory forum selection clause, the usual *forum non conveniens* analysis no longer applies) (citing *Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 509-10 (2d Cir. 1998) (suggesting that a district court should first determine whether a forum selection clause was enforceable, and should only reach the defendant's motion to dismiss on *forum non conveniens* grounds if it finds that the parties did not form a contract containing a forum selection clause) (additional citations omitted). Nevertheless, because the parties have briefed *forum non conveniens* arguments, the court shall address those arguments briefly.

As Apotex points out, "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 265-66

(1981). Apotex argues that its decision to litigate in Illinois is due great deference. In particular, a great amount of deference must be shown to the choice of a U.S. forum by a plaintiff who is a citizen of the United States. *Id.* at 256.

As Defendants point out, however, only one of the two Apotex plaintiffs is a United States citizen, and the Supply Agreement specifically mandated that Apotex place orders for acyclovir via Atlantic Chemicals & Pharmaceuticals, a Canadian company. The Seventh Circuit has noted that "given the ever-expanding realm of international commerce, many courts have somewhat discounted a plaintiff's United States citizenship when that plaintiff is an American corporation with extensive foreign business and it brings an action for an injury occurring in a foreign country." *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 804 (7th Cir. 1997). Assuming that the supply agreement Unibios entered into with Glaxo Wellcome led Unibios to breach its contract with Apotex (as Apotex contends), the bulk of those events appears to have occurred in Italy, where Unibios is headquartered, or in England, the GSK Defendants' base.

Borrowing from the closely related issue of choice of law, the court notes that Illinois courts adhere to the "most significant contacts" test to determine which law applies in a contractual dispute. *P.S.& E., Inc. v. Selastomer Detroit, Inc.*, 470 F.2d 125, 127 (7th Cir. 1972). The test requires examination of the following factors: the place of contracting; the place of negotiation; the place of performance; the situs of the subject matter of the contract; and the domicile, residence, place of incorporation, and place of business of the parties. *Illinois Tool Works v. Sierracin Corp.*, 479 N.E.2d 1046, 1051, 134 Ill.App.3d 63, 69 (1st Dist. 1985). Although the record is not entirely clear on all these factors, it would be a stretch to conclude that Illinois had the most significant contacts regarding the Supply Agreement. Although the injury may well have been felt in the United States, the contract appears to have been primarily negotiated between individuals in Canada and Italy. Orders were placed via a Canadian company. Of the four parties to the lawsuit, only Apotex, Inc. has any apparent connection to the chosen forum. Finally, performance of the

contract would apparently occur when Unibios shipped acyclovir from Italy (the record is not clear as to whether Unibios would ship directly to the United States or through Canada).

With respect to Apotex's tort claims against the GSK Defendants, Illinois applies a similar version of the "most significant contacts" approach. The contacts Illinois courts consider are the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, place of incorporation and place of business of the parties, and the place where the relationship between the parties, if any, is centered. *Wreglesworth ex rel. Wreglesworth v. Arctco, Inc.*, 316 Ill.App.3d 1023, 1031, 738 N.E.2d 964, 971 (1st Dist. 2000). With respect to the first factor, the harm done to Apotex, Inc., but not Apotex Corp., was presumably felt in Illinois. Apotex alleges that the injury inflicted by the GSK Defendants occurred when Glaxo Wellcome entered into a contract with Unibios for acyclovir and forced Unibios to cancel its contract with Apotex. (Complaint ¶¶ 51, 52.) There is no allegation that any of these events took place in Illinois or anywhere in the United States. All three GSK Defendants, and one of the Plaintiffs, are foreign corporations. The fourth factor is of little help here as no relationship between the GSK Defendants and Apotex apparently existed. The court is not convinced that Illinois is the site with the most significant contacts to the alleged tortious acts committed by the GSK Defendants. Although the court recognizes Illinois' potential interest in having access to generic acyclovir, and Apotex's interest in litigating here, the court finds that on the whole, the interests are not so strong that they warrant litigation in this court.

**Other Private Interest Factors**

Consideration of the remaining private interest factors yields the same result. First, the court considers access to sources of proof. The record does not reflect any physical evidence likely to be introduced that is located in Illinois (or even in the United States for that matter). On the other hand, the parties have represented to the court that many relevant documents, including

court documents from the Italian litigation, are located in Italy. The court concludes that, on balance, a trial in Italy would likely be much less cumbersome than one held in this court.

The other private interest factors the court should address relate to the convenience of the litigants and include the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Piper Aircraft,* 454 U.S. at 241, n.6 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The issue of whether the witnesses in this case will be subject to compulsory process in the United States is a complicated one which will depend on the status of each individual witness. The court need not devote much attention to the matter, however, as the record shows that the overwhelming majority of the witnesses expected to be called at trial (31 out of 34) are located in Europe, either in Italy or the United Kingdom. As Defendants emphasize, convenience to witnesses is a significant consideration under a *forum non conveniens* analysis. See *Interpane Coatings, Inc. v. Australia & New Zealand Banking Group, Ltd.*, 732 F.Supp. 909, 916 (N.D. Ill. 1990). Apotex contends that the Defendants have inflated their witness lists to bolster the number of foreign witnesses, but nothing in the record supports this accusation, and the court presumes that the representations of the parties have been made in good faith. In any event, Apotex itself has only identified three potential witnesses who live in Illinois. Therefore, the court concludes that the cost and inconvenience of holding a trial in this court will likely exceed the cost of litigating the matter in an Italian tribunal.

After careful consideration, the court concludes that the private interests favor an Italian forum. The parties would likely incur substantially higher costs litigating before this court than they would litigating in Italy. The court notes apart from inconvenience to its attorneys, there is no indication that Apotex will face any substantive prejudice from having to litigate in Italy. According to evidence in the record, the GSK Defendants are amenable to suit in Italian courts, and Italian

law recognizes a cause of action for inducing a third-party to breach a contract. (Del Corno Decl. ¶¶ 8, 10.)

**Public Interest Factors**

As opposed to the private interests considered by courts in a *forum non conveniens* motion, the relevant public interest factors relate to the convenience of the tribunal itself. *Piper Aircraft*, 454 U.S. at 241, citing *Gilbert*, 330 U.S. at 508-509. These factors include the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 241, n.6, citing *Gilbert*, 330 U.S. at 509. The parties do not address the first factor, and, although this court is not short of work, there is no indication that Italian courts are less burdened.

The second and third factors are more pertinent to this dispute. If this action were to proceed in Illinois, under Illinois choice of law rules it is possible that Italian law would apply. See *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002) (noting that Italian law might apply to a dispute in which an Illinois corporation sought a declaratory judgment from an Illinois federal court that it had no obligation to pay the Italian defendant any fee or commission in connection with a hotel development in Milan, Italy). It appears that the alleged breach of contract and tortious acts were committed in Italy, as discussed previously. Under Illinois law, it is at least likely that Italian law would govern these causes of action. See *Ingersoll v. Klein*, 46 Ill.2d 42, 47-48, 262 N.E.2d 593, 596 (Ill. 1970) (Illinois applies a "significant relationship" test to determine choice of law).

The court has an interest in not having "to delve into the tenets of an unfamiliar legal system." *Kamel*, 108 F.3d at 805. Were the trial conducted in this forum, the court anticipates an

17

expenditure of considerable resources in determining Italian contract law and its application to this case. Interpretation of the agreement settling the Italian patent litigation might also be necessary. While such an endeavor would probably be interesting and rewarding for the court, it might well result in significant delay. In contrast, an Italian tribunal would not need to exert extra energy not ordinarily needed to decide disputes of this nature. On balance, therefore, the court concludes that the case will likely proceed more quickly and smoothly in an Italian court than this one.

Finally, Apotex has failed to demonstrate to the court that there is significant local interest in this matter. Pursuant to the Supply Agreement, orders for acyclovir were to be made via Atlantic Chemicals & Pharmaceuticals, a Canadian company which apparently had input into the language of the Supply Agreement, (see Memorandum from E.A. Relle to B. Garibaldi of Dec. 7, 1994, Ex. 6 to GSK Defs.' Mem.), and eventually sold in the United States (again the record is unclear on where the acyclovir would actually be shipped). Although Apotex Corp. may have felt the injury in Illinois, the injury actually occurred overseas, when Unibios allegedly breached its promises under the Supply Agreement. For these reasons, the court concludes that the public interest factors favor resolution of this case in Italy.

In sum, the court holds that Italy would provide a more efficient and convenient litigation forum for this case. Therefore, the court grants the GSK Defendants' and Unibios' motions to dismiss for *forum non conveniens*. For these reasons, the court concludes that the public interest factors favor resolution of this case in Italy.

## **CONCLUSION**

Defendant Unibios and the GSK Defendants' motions to dismiss under the doctrine of *forum non conveniens* (Docs. No. 14-2, 33-1) are granted. Defendants' motions to dismiss for lack of

personal jurisdiction (Docs No. 7-1, 141, and 32-1) are stricken without prejudice. This case is dismissed without prejudice to litigation in Italy. Apotex's agreed motions for leave to file an oversize brief (Doc. No. 51-1) and for restriction of documents (Doc. No.53-1) are granted as directed on June 19, 2003.

ENTER:

Dated: July 30, 2003

REBECCA R. PALLMEYER
United States District Judge